UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FREDERICK MAGNER, Plaintiff, - against – ALVANON, INC., ALVANON HK, LTD, JANICE WANG, in her corporate capacities as CEO of Alvanon, Inc. and Alvanon HK, LTD and in her individual capacity, JASON WANG, in his corporate capacity as COO of Alvanon HK, LTD and Alvanon, Inc. and in his individual capacity, ERIC LEE, in his corporate capacity as Executive Director of Alvanon, Inc. and in his individual capacity, and AGNES SERRANT, in her corporate capacity of General Manager/HR of Alvanon, Inc. and in her individual capacity, Defendants. | **AMENDED COMPLAINT DEMAND** Civil Action No. 24-CV-09190 (MKV) |

By and through his counsel, Jimmy M. Santos, Esq. of the Law Offices of Jimmy M. Santos, PLLC, Plaintiff Frederick Magner ("Plaintiff" or "Mr. Magner"), as his First Amended Complaint as Ordered by the Court, see attached) avers as follows:

## I. PARTIES, JURISDICTION & VENUE

1. Plaintiff resides at 523 Windy Hill Rd, West Chester, PA 19382.
2. Defendant Alvanon, Inc. ("ALVANON") is located at 102 West 38th Street, 4th Floor, New York, New York 10018.
3. ALVAVON is a corporation registered in Delaware, New York, and/or the laws of the United States.

4. At all relevant times, ALVANON was Mr. Magner's employer within the meaning of that term under New York Labor Law ("NY LL") §§ 190, 193, *et seq.*, and 215.

5. At all relevant times, Defendant Alvanon HK, LTD ("ALVANON HK"), with ALVANON, was Plaintiff's employer pursuant to NY LL §§ 190, 193, *et seq.*, and 215.

**6.** At all relevant times, ALVANON HK was created and/or registered corporation under the laws of the Cayman Islands. ALVANON HK is located 29-37 Kwai Wing Road, 10/F Sing Me Ind. Bldg, Kwai Chung, NT.

7. At all relevant times, Defendant Janice Wang ("Janice Wang") was and continues to be the CEO of ALVANON HK and ALVANON, INC. and was the head of their business operations.

8. At all relevant times, Janice Wang and Jason Wang made and continue to make personnel decisions (such as disciplining, hiring and termination) regarding employees of ALVANON and ALVANON HK. **See, EXH 1**

9. At all relevant times, all IT support for ALVANON, Inc. was done by ALVANON HK personnel. **See, EXH 2.**

10. At all relevant times, Janice Wang and Jason Wang were and continue to be in control of ALVANON and ALVANON HK's business operations.

11. At all relevant times, Janice Wang had and continues to have the authority to hire, supervise, discipline and/or terminate (and participated in the decision to terminate Plaintiff's employment) and of defendants Jason Wang ("Jason Wang"), Eric Lee ("Lee"), and Agnes Serrant ("Serrant"). As such, at all

relevant times, Janice Wang was also Plaintiff's employer under the meaning of that term in NY LL §§ 190, 193, *et seq.*, and 215.

12. At all relevant times, Janice Wang and Jason Wang have equal ownership along with Sino Proper Holding Inc., a corporation incorporated in the British Virgin Islands, of ALVANON HK. **Attached as EXH 3** is a copy of documents showing the ownership structure and a compliance form which was required for the Walmart/ Mexico y Centroamerica account.

13. As per its website, ALVANON with ALVANON HK is in the business of:

> "[Creating, manufacturing, and sales of] mannequins based on real human anatomy, created with an understanding of pattern making and garment production in mind, to help brands, designers and retailer ensure their products achieve the best possible fit.
>
> Today, Alvanon is a global innovations company that helps apparel brands improve their fit to reflect modern-day consumers. Since 2001, Alvanon has used the latest technology and body shape data to advise the world's leading apparel brands and retailers [such as Kohle's, Ralph Lauren and J. Crew] on fit and sizing strategies." See, https://alvanon.com/about/

14. At all relevant times, Jason Wang ("Jason Wang") served and continues to serve as COO of ALVANON and ALVANON HK.

15. At all relevant times, Eric Lee ("Lee") served and continues to serve as ALVANON's and ALVANON HK's Executive Director, Americas.

16. At all relevant times, Agnes Serrant ("Serrant") served and continues to serve various roles as Director of Finance, *de facto* Human Resources and General Manager, Americas, for the ALVANON and ALVANON HK.

17. Accordingly, at all relevant times, because ALVANON and ALVANON HK share: common ownership; business operations; and a common business

purpose, ALVANON and ALVANON HK (collectively, the "ALVANON GROUP") constituted Plaintiff's "joint employer" and/or "single enterprise [employer]" under NY LL §§ 190, 193, *et seq.*, and 215.

18. Defendants Janice Wang, Jason Wang, Lee and Serrant all participated in the decision to make and/or aided and abetted in making unauthorized deductions from Plaintiff's compensation in violation of NY LL §§ 190, 193, & 198.

19. Defendants Janice Wang, Jason Wang, Lee and Serrant all participated in the decision and/or aided and abetted in the termination of Plaintiff's employment with the ALVANON GROUP in violation of NY LL § 215.

20. At all relevant times, the ALVANON GROUP was not registered as a foreign corporation for performing business in Pennsylvania.

21. All defendants conduct substantial business in and have substantial contacts to the County of New York, New York, and thus, the Court has personal jurisdiction over each defendant.

22. Prior to filing this action, Plaintiff notified the NY Attorney General's Office that he was filing this action. **Attached as EXH 4** is a copy of the Notice**.**

23. Pursuant to 28 USCS § 1391(b)(2), the U.S. District Court for the Southern District of New York ("SDNY") is the proper venue for this action since all or most of defendants' substantial adverse employment actions against Plaintiff under Article 6 of the NY Labor Law occurred in the SDNY.

24. Because the amount in controversy is more than $75,000.00 and this action is between citizens of different states and foreign countries, the Court has diversity jurisdiction pursuant to 28 USC § 1332.

## II. FACTUAL AVERMENTS

25. On or about November 2010, the ALVANON hired Plaintiff to serve as a commission salesperson as that term is defined under NYLL §§ 190, *et seq.*

26. Until approximately two (2) years prior to his termination by defendants, Mr. Magner worked and lived in New York.

27. In or around October 2020, Plaintiff moved to Pennsylvania and performed work remotely from PA, of which arrangement defendants approved.

**28.** At all relevant times, Mr. Magner served as Director, Americas selling the products and services on behalf of the ALVANON GROUP. **See, EXH 5**

29. At the beginning of Plaintiff's employment, defendant ALVANON GROUP required Mr. Magner to execute a Non-Disclosure Agreement ("NDA") stating that the laws of NYS would apply as well as New York being the chosen venue without waiver.

30. At all relevant times, the terms of Plaintiff's employment with the ALVANON GROUP were never reduced to writing and signed by Plaintiff and any authorized agent of the ALVANON GROUP in violation of NYLL § 191.

31. Plaintiff acted as a commission salesperson for the ALVANON GROUP. It was told to Plaintiff that this arrangement was created to avoid paying federal and New York state corporate taxes during the time Plaintiff was employed by the ALVANON Group.

32. At all relevant times up to including the date of termination, defendant ALVANON GROUP taxed Plaintiff as a New York State and/or New York City employee, even while he worked for defendants remotely from Pennsylvania.

33. Similarly, another sales director who worked remotely from Pennsylvania was taxed as a New York State and/or New York City employee for approximately eleven (11) years.

34. At all relevant times, the ALVANON GROUP supplied all the equipment, such as a laptop, so that Mr. Magner could perform all of his work on behalf of the ALVANON GROUP from PA.

35. From November 2010 to October 3, 2024, the date defendants terminated Mr. Magner, Plaintiff's job performance was more than satisfactory, and he performed his job functions in a highly professional manner.

36. At all relevant times, Mr. Magner's sales territory included that of the entire State of New York, and did not include Pennsylvania.

37. From November 2010 to October 3, 2024, no defendant ever notified Plaintiff of any belief that he was under-performing, was deficient in his work performance, nor issued any warnings by anyone from the ALVANON GROUP.

38. On or about October 31, 2019, Joe Fittipaldi ("Fittipaldi"), the CFO and General Manager of ALVANON at the time, notified Plaintiff that the ALVANON GROUP was introducing a new commission plan which changed the prior flat commission by reclassifying business as old versus new. This was done at varying rates.

39. Plaintiff did not agree to this new change to the commission structure, nor did he authorize deductions from his compensation.

40. On or about August 29, 2022, at the direction of Janice Wang, Fittipaldi advised Plaintiff that certain accounts classified as uniforms/ military were going to be taken away from him and would be transferred to another sales employee in the middle a commissionable quarter beginning on September 1, 2022.

41. This unilateral transfer of Plaintiff's accounts was retroactive as the transfer was in the middle of a commissionable quarter which included a draw.

42. Plaintiff did not agree in any writing to remove these accounts during the middle of a commissionable quarter with anyone from the ALVANON GROUP nor did he authorize anyone at the ALVANON GROUP to make deductions from his compensation as to this new commission structure (the "New Plan").

43. On or about August 2022, Mr. Magner met with Fittipaldi to discuss the losses Plaintiff would and did incur by the New Plan compared to the prior plan on a similar revenue basis.

44. At that time, Mr. Magner told Fittipaldi that the way the ALVANON GROUP recognized new business was arbitrary because Plaintiff had no control over the time when the vendors placed and paid for their orders to ALVANON GROUP.

45. Although vendors were serviced only by ALVANON HK; Plaintiff worked directly with the brands and only provided administrative support with respect to the vendors.

46. During that meeting, through a spreadsheet Plaintiff showed Fittipaldi the lost commissions Mr. Magner had incurred by defendants' unilateral implementation of the New Plan.

47. In response, Fittipaldi said that he would speak with Jason Wang about Plaintiff's concerns.

48. No defendant herein reversed the decision to issue the New Plan, and as result, Mr. Magner lost, at a minimum, approximately 1.5% (or, approximately $125,300.79) of his commissions.

49. On January 22, 2023, Fittipaldi told Plaintiff that the ALVANON GROUP would be deducting $4,500.00 from Plaintiff's future commissions in quarters 1 and 2 of 2023 which were previously paid to Mr. Magner because he was paid on the Department of Defense account during the middle of a commissionable quarter in violation of NYLL § 191 & 193.

50. Mr. Magner did not authorize anyone from the ALVANON GROUP to make deductions from his compensation for this deduction.

51. In or about April 2023, in a meeting with Jason Wang, Plaintiff stated he didn't see any path of what he was making before because of the way the new business was recognized. Jason Wang stated that something to the effect of - "[I] will look into it".

52. As to the terms of all the various commission schemes which the ALVANON GROUP rolled out, Plaintiff did not authorize anyone at the ALVANON GROUP to make any deductions from his commissions.

53. In or about early April 2024, in a meeting with Lee, Lee told Mr. Magner that the decision was made by Jason Wang that Plaintiff would have to share his commissions on one of Mr. Magner's accounts (Calvin Klein) with another ALVANON GROUP employee located in the Europe because it was re-classified as "global" for the 1st quarter forward of 2025 (the "New Plan II").
54. Plaintiff rejected the mandate because there was no material change in Plaintiff's sales territory since the Calvin Klein account still remained in Plaintiff's sales territory.
55. ALVANON GROUP's distribution of accounts amongst its sales people was defined based on different geographic territories, and there was no cross-selling between territories..
56. Plaintiff refused to accept this unilateral change to the commission structure by the ALVANON GROUP and Janice Wang, Jason Wang and Lee since this would and did further reduce Mr. Magner's commissions.
57. On or about April 19, 2024, in a meeting with Lee, Lee yelled at Plaintiff that "[the change in the new commission plan] was non-negotiable".
58. On or about the same time, Plaintiff learned that Lee had stated to a colleague something to the effect of – "in a year from now, the company will look very different; Ralph will be retired, and [Mr. Magner] will be gone".
59. In or about May of 2024, Lee began to monitor Plaintiff's outgoing and incoming emails for the first time.
60. On or about July 22, 2024, Plaintiff received a report of clients' payments for orders, but no sales person was listed for the Calvin Klein/PVH account (which

was Plaintiff's account). Historically, Plaintiff's name was always identified with this account.

61. On October 3, 2024, as per Janice Wang's and Jason Wang's directive, in an in-person meeting with Lee at the ALVANON GROUP's NYC Office with Serrant and Lee, Plaintiff was told that his employment with the ALVANON GROUP was terminated. At the time of termination, no defendant gave any notice to Plaintiff under NY LL § 195(6) nor notice that Plaintiff had a right to file an application for unemployment benefits under 12 NYCRR § 472.8.

62. Prior to the termination, Lee directed that Plaintiff's access to Mr. Magner's corporate email be removed. See, **EXH 6**

63. During the meeting, Mr. Magner asked for the identity of those in the ALVANON GROUP who made the decision to terminate him.

64. In reply, Lee stated that something to the effect of - "the decision was [Lee's] and the Company's".

65. Plaintiff then asked Lee something to the effect of – "is the Company [you're referring to] the Wang family?", Lee confirmed that this was so.

66. Within hours of Plaintiff's termination, Lee met with Ralph Ehinger, Sr. Regional Director, Americas of the ALVANON GROUP.

67. In that meeting. Lee unveiled a new ALVANON GROUP commission plan for which sales commissions would be discounted at .5%.

68. Ehlinger verbally rejected this new unilateral commission plan, to which Lee told him that he would have to address it when Janice Wang was coming to New York.

69. Soon thereafter, Ehinger met with Janice Wang, in which she stated something to the effect of - "how long do you consider working [here] because we didn't expect you to be working that long [and we] don't have you allocated in the budget".

70. Defendants terminated Plaintiff due to Mr. Magner's opposition and refusals to accept the ALVANON GROUP's, Janice Wang's, Jason Wang's and Lee's multiple unilateral changes to Plaintiff's commission plans as set forth above.

71. As a result of the ALVANON GROUP's, Janice Wang's, Jason Wang's and Lee's unilateral changes to Plaintiff's commission plans as outlined above, Plaintiff has suffered a loss of approximately $125,300.79, at a minimum, of his aggregate commissions from 2020 to 2024 in earned commissions.

72. As per ALVANON, INC.'s employment handbook, the ALVANON GROUP owes Plaintiff of $5,076.48 (for 12 unused accrued vacation days).

73. The ALVANON GROUP is also liable $4,500.00 for the chargeback as outlined in paragraph "41" above.

74. As a result of defendants' termination of Plaintiff's employment, Plaintiff has lost and will lose significant back and front pay.

75. ALVANON GROUP's Janice Wang's, Jason Wang's, and Lee's unilateral changes to Plaintiff's commission plans (as they constituted unauthorized deductions from Plaintiff's compensation) as outlined above were intentional and willful, and thus, these defendants are liable for liquidated damages under NY LL §§ 190, 193 & 198.

76. Defendants' retaliatory discharge of Plaintiff was intentional and willful, and thus, all defendants are liable for liquidated damages under NY LL §§ 215.

**AS AND FOR PLAINTIFF'S 1ST SET OF CLAIMS AGAINST DEFENDANTS ALVANON GROUP, ALVANON, INC, ALVANON HK, JANICE WANG, JASON WANG AND ERIC LEE FOR MAKING UNAUTHORIZED DEDUCTIONS FROM PLAINTIFF'S PAY**

77. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs "1" through "76".

78. As described in more detail above, these defendants' unilateral changes to Plaintiff's commission plans as outlined above, and constituted unauthorized deductions from Plaintiff's compensation, Plaintiff has suffered a loss of approximately $125,300.79, at a minimum, in earned commissions and the charge back of $4,500.00 in violation of NY LL §§ 190, 191, 193 & 198

**AS AND FOR PLAINTIFF'S 2nd SET OF CLAIMS AGAINST DEFENDANTS JANICE WANG AND JASON WANG FOR MAKING UNAUTHORIZED DEDUCTIONS FROM PLAINTIFF'S PAY**

79. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs "1" through "78".

80. As described in more detail above, defendants Janice Wang and Jason Wang, in their individual capacities, made unilateral changes to Plaintiff's commission plans as outlined above, and constituted unauthorized deductions from Plaintiff's compensation, Plaintiff has suffered a loss of approximately

$125,300.79, at a minimum, in earned commissions and the charge back of $4,500.00 in violation to N.Y. Bus. Corp. Law § 630 and N.Y. LLC Law § 609

**AS AND FOR PLAINTIFF'S 2ND SET OF CLAIMS AGAINST ALL DEFENDANTS FOR HIS DISCHARGE IN RETALIATION FOR REFUSING AND OPPOSING THEIR UNLAWFUL DEDUCTIONS FROM PLAINTIFF'S PAY**

81. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs "1" through "80".

82. All defendants subjected Plaintiff to unlawful retaliation by terminating of Plaintiff's employment due to Plaintiff's opposition and complaints by Plaintiff of his being subjected to defendants' unauthorized deductions from Plaintiff's compensation in violation of NY LL §§ 215.

**AS AND FOR PLAINTIFF'S 3rd SET OF CLAIMS AGAINST DEFENDANTS JANICE WANG AND JASON WANG FOR HIS DISCHARGE IN RETALIATION FOR REFUSING AND OPPOSING THEIR UNLAWFUL DEDUCTIONS FROM PLAINTIFF'S PAY**

83. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs "1" through "83".

84. Defendants Janice Wang and Jason Wang, in their individual capacities, subjected Plaintiff to unlawful retaliation by terminating of Plaintiff's employment due to Plaintiff's opposition and complaints by Plaintiff of his being subjected to their unauthorized deductions from Plaintiff's compensation in violation of N.Y. Bus. Corp. Law § 630 and N.Y. LLC Law § 609

**AS AND FOR PLAINTIFF's 4TH SET OF CLAIMS AGAINST THE ALVANON GROUP, ALVANON, INC. AND ALVANON HK IN *QUANTUM MERUIT***

85. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs "1" through "84".

86. At all relevant times, Plaintiff satisfactorily performed services for these defendants in good faith.

87. At all relevant times, these defendants accepted Plaintiff's rendered services and Mr. Magner had an expectation of receiving compensation for the services he did on behalf of these defendants.

88. By these defendants' non-payment of $125,300.79, at a minimum, in earned commissions and the charge back of $4,500.00, therefore, these defendants are liable to pay this amount in *quantum meruit* to Plaintiff under New York common law.

**AS AND FOR PLAINTIFF's 5th SET OF CLAIMS AGAINST THE ALVANON GROUP, ALVANON, INC. AND ALVANON HK FOR UNJUST ENRICHMENT**

89. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs "1" through "88".

90. At all relevant times, through Plaintiff's work for these defendants, these defendants were enriched by Plaintiff's in an amount of $125,300.79, at a minimum, in unpaid commissions and the charge back of $4,500.00 by these defendants at Plaintiff's expense, and Mr. Magner had an expectation of

receiving these unpaid commissions for the services he did on behalf of these defendants.

91. By defendants' non-payment of $125,300.79, at a minimum, and the charge back of $4,500.00, defendants are liable to pay this amount in *quantum meruit* to Plaintiff under New York common law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court empanel a jury of his peers and enter judgement against Defendants as follows, in an amount to be determined at trial, inclusive but not limited to:

(a) an award of lost commissions as a result of defendants' unauthorized deductions from Plaintiff's compensation at a loss of approximately $125,300.79, at minimum, in commissions, and $4,500.00 in charge backs;

(b) an award of back and front wages and full compensatory damages against defendants for their unlawful retaliatory discharge against him in an amount to be determined at trial, including payment for Plaintiff's suffering of any physical and mental distress and injury, mental anguish, humiliation, and embarrassment from defendants' unlawful retaliatory discharge;

(c) an award of liquidated and/or punitive damages against all defendants for their intentional and unlawful acts against Plaintiff for defendants' violations of Article 6 of the NY Labor Law in an amount to be determined at trial;

(d) an award of Plaintiff's reasonable attorney's fees and the costs of prosecuting of this action under Article 6 of the NY Labor Law; *and*

(e) any such other and further relief that this Court may deem just and proper.

Dated: February 27, 2025
Cornwall, New York

Respectfully Submitted,

LAW OFFICES OF JIMMY M. SANTOS, PLLC

By: /S/ ____________________
Jimmy M. Santos, Esq. (JS-0947)
28 Wilson Place
Cornwall, New York 12518
Phone: (845) 537-7820
Fax: (845) 595-2266
Email: jmssesq@gmail.com
*Attorney for Plaintiff*