UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
FREDERICK MAGNER,

                Plaintiff,

- against –

ALVANON, INC., et al.

-------------------------------------------------------------

Civil Action No.
24-CV-09190 (MKV)


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS UNDER Fed.R.Civ.Pro. 12(b)(1) & 12(b)(6)**


Date:  May 2, 2025
       Cornwall, New York 12518

Respectfully Submitted:

<u>// Jimmy M. Santos</u>
Jimmy M. Santos, Esq. (JS-0947
LAW OFFICES OF JIMMY M. SANTOS, PLLC
28 Wilson Place
Cornwall, New York 12518
Phone: (845) 537-7820
Email: jmssesq@gmail.com
*<u>Attorneys for Plaintiff Frederick Magner</u>*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES …………………………………………………… ii

STATEMENT OF FACTS …………………………………………………. 1

LEGAL ARGUMENT ……………………………………………….. 6

    STANDARD FOR A MOTION TO DISMISS UNDER
    FED.R.CIV.PRO. 12(b)(1) ………………………………………… 6

    STANDARD OF MOTION TO DISMISS UNDER
    FED.R.CIV.PRO 12(b)(6) ………………………………………. 7

    A.    THE COURT HAS SUBJECT MATTER JURISDICTION OVER
        PLAINTIFF'S NYLL CLAIMS…………………………………. 8

        1.    THE PRESUMPTION OF THE NYLL IS OVERCOME BY
            NEWYORK'S CHOICE OF LAW ANALYSIS………… 8

            a.    New York Choice of Law……………………….. 8

    B.    PLAINTIFF HAS ADEQUATELY PLED CLAIMS FOR UNPAID
        COMMISSIONS UNDER NYLL sec. 193, *QUANTUM MERUIT*,
        AND UNJUST ENRICHMENT…………………………………. 13

        1.    UNAUTHORIZED DEDUCTIONS UNDER
            NYLL sec. 193 ……………………………………… 13

        2.    *QUANTUM MERUIT* AND UNJUST ENRICHMENT….. 14

CONCLUSIONS …………………………………………………. 15

# TABLE OF AUTHORITIES

**FEDERAL STATUTES**

Fed.R.Civ.Pro. 12(b)(1)……………………………………………………………  6

Fed.R.Civ.Pro 12(b)(6)…………………………………………………………….  7


**FEDERAL CASES**

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949,
73 L. Ed. 2d 868 (2009)………………………………………………………  7

Barbagallo v Marcum LLP, 925 F Supp 2d 275 (EDNY 2013)………………  14

Danusiar v Auditchain USA, Inc., 2020 US Dist LEXIS 186941 (SDNY 2020)..  7

Gould v. Lightstone Value Plus Real Estate Investment Trust, Inc.,
301 Fed.Appx. 97 (2d Cir. 2008)…………………………………………………..  14

Heng Guo Jin v. Han Sung Sikpoom Trading Corp., 2015 U.S. Dist. LEXIS 125961,
2015 WL 5567073 (E.D.N.Y. 2015)………………………………………………….  8, 9

Karic v Major Auto. Cos., 992 F Supp 2d 196 (EDNY 2014)…………………..  12

Kassman v. KPMG LLP, 925 F. Supp. 2d 453 (S.D.N.Y. 2013)………………..  12, 15

Kaur v Royal Arcadia Palace, Inc., 643 F.Supp.2d 276 (EDNY 2007)………...  15

Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111 (2d Cir. 2010)………….  7

Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531 (2d Cir. 1997))..  10

Longo v. Shore & Reich, Ltd., 25 F.3d 94, 98 (2d Cir. 1994)……………………  14

Maldonado v. La Nueva Rampa, Inc., 2012 U.S. Dist. LEXIS 67058,
2012 WL 1669341 (S.D.N.Y. 2012)…………………………………………….  13

Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168
(2d Cir. 2005)……………………………………………………………………  14

O'Neill v. Mermaid Touring, Inc., 968 F. Supp. 2d 572 (S.D.N.Y. 2013)………  12

Perez v. Westchester Foreign Autos, Inc., 2013 U.S. Dist. LEXIS 35808
(S.D.N.Y. 2013) ……………………..…………………………………..     13

Pierre v Gts Holdings, Inc., 2015 U.S. Dist. LEXIS 160345, 2015 WL 7736552
(SDNY 2015)……………………………………………………………..     9, 10,
    11

Solouk v Eur. Copper Specialties, Inc., 2019 US Dist LEXIS 81267 (SDNY 2019)..     8

Sosnowy v A. Perri Farms, Inc., 764 F.Supp2d 457 (EDNY 2011) ………………..     15

Warman v. Am. Nat'l Standards Institute, 2016 WL 3676681 (SDNY 2016) ….     12

White Plains Coat & Apron Co. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006)..     10

Zaldivar v. Anna Bella's Cafe, LLC, 2012 U.S. Dist. LEXIS 25695, 2012 WL
642828, at *2 (E.D.N.Y. 2012))…………………………………..................     7

## NYS STATUTES

NYLL § 193……………………………………………………………...     11, 13

NYLL § 195(6)…………………………………………………………..     6

NYLL § 196-d……………………………………………………………     11

12 NYCRR § 472.8………………………………………………………     6

## NYS CASES

Clark-Fitzpatrick, Inc. v. Long Island Railroad Co., 70 N.Y.2d 382, 516 N.E.2d 190,
521 N.Y.S.2d 653 (N.Y. 1987)…………………………………………….     14

Goshen v. Mut. Live Ins. Co. of N.Y., 730 N.Y.S.2d 46 (App. Div. 1st Dep't 2001)..     12

Karter v Longevity Health Servs. LLC, 2024 NY Slip Op 32542[U], *5
(Sup Ct, NY County 2024) …………………………………………………..     15

Liang Rui Pang v Flying Horse Trucking Co., 2023 N.Y. Misc. LEXIS 8692
(Sup Ct, Queens County 2023)……………………………………………     10

Padula v. Lilarn Properties Corp., 84 N.Y.2d 519, 644 N.E.2d 1001,

620 N.Y.S.2d 310 (NY 1994) ……………………………………………..     8, 10

Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 480 N.E.2d 679,
491 N.Y.S.2d 90 (N.Y. 1985)……………………………………………..     10

## **OTHER**

Restatement, Second, Conflict of Laws, § 379[1]……………………………….     10

**STATEMENT OF FACTS**

Plaintiff Frederick Magner ("Plaintiff" or "Magner") resides at 523 Windy Hill Rd, West Chester, PA 19382. Prior to 2020, Plaintiff resided in New York, New York. At all relevant times, Defendant Alvanon, Inc. ("ALVANON") was and continues to be located at 102 West 38th Street, 4th Floor, New York, New York 10018. ALVAVON is a corporation registered in New York. At all relevant times, Defendant Alvanon HK, LTD ("ALVANON HK"), with ALVANON, was Plaintiff's employer. At all relevant times, ALVANON HK was created and/or registered corporation under the laws of the Cayman Islands. ALVANON HK is located 29-37 Kwai Wing Road, 10/F Sing Me Ind. Bldg, Kwai Chung, NT, *but not* in New York.

At all relevant times, Defendant Janice Wang ("Janice Wang") was and continues to be the CEO of ALVANON HK and ALVANON, INC. and was the head of their business operations. At all relevant times, Janice Wang and Jason Wang, COO, made and continue to make personnel decisions (such as disciplining, hiring and termination) regarding employees of ALVANON and ALVANON HK. At all relevant times, all IT support for ALVANON, Inc. was done by ALVANON HK personnel. At all relevant times, defendants Janice Wang and Jason Wang were and continue to be in control of ALVANON and ALVANON HK's business operations. As per its website, ALVANON with ALVANON HK is in the business of:

> "[Creating, manufacturing, and sales of] mannequins based on real human anatomy, created with an understanding of pattern making and garment production in mind, to help brands, designers and retailer ensure their products achieve the best possible fit.

Defendant Eric Lee is ALVANON's and ALVANON HK's Executive Director, of the Americas. ALVANON's and ALVANON HK's Executive Director, Americas. Defendants

Janice Wang, and Eric Lee all had the authority to hire, supervise, discipline and/or terminate (and participated in the decision to terminate Plaintiff's employment) as well as defendants Jason Wang ("Jason Wang"), and Eric Lee ("Lee"). Janice Wang and Jason Wang have equal ownership along with Sino Proper Holding Inc., a corporation incorporated in the British Virgin Islands, of ALVANON HK. Because ALVANON and ALVANON HK share common: ownership; business operations; and a common business purpose, ALVANON and ALVANON HK (collectively, the "ALVANON GROUP") constituted Plaintiff's "joint employer". At all relevant times, the ALVANON GROUP *was not* registered as a foreign corporation for performing business in Pennsylvania.

On or about November 2010, the ALVANON GROUP hired Plaintiff to serve as a commission salesperson. Until approximately two (4) years prior to his termination by defendants, Mr. Magner worked and lived in New York, and worked for it for fourteen (14) years before he was terminated. In or around October 2020, Plaintiff moved to Pennsylvania and performed work, as Sales Director for the Americas, remotely from PA, of which arrangement defendants approved, and sold products and services on behalf of the ALVANON GROUP.

At the beginning of Plaintiff's employment, defendant ALVANON GROUP required Mr. Magner to execute a Non-Disclosure Agreement ("NDA") stating that the laws of NYS would apply as well as New York being the chosen venue without waiver. At all relevant times, the terms of Plaintiff's employment with the ALVANON GROUP was never reduced to writing and signed by Plaintiff and any authorized agent of the ALVANON GROUP [1]. Defendants _____ told Plaintiff that this arrangement was created to avoid paying federal and New York state corporate taxes during the time Plaintiff was employed by the ALVANON Group. At all relevant times up

---

[1] This is a violation of NY Labor Law (hereinafter the "NYLL") § 191.

2

to including the date of Mr. Magner's termination, defendant ALVANON GROUP taxed Plaintiff, and another sales director who worked remotely from Pennsylvania, as New York State and New York City employees. At all relevant times, the ALVANON GROUP[2] supplied all the equipment, such as a laptop, so that Mr. Magner could perform all of his work on behalf of the ALVANON GROUP from PA.

From November 2010 to October 3, 2024, the date defendants terminated Mr. Magner, Plaintiff's job performance was more than satisfactory, and he performed his job functions in a highly professional manner. At all relevant times, Mr. Magner's sales territory included the entire State of New York, _and did not_ include Pennsylvania. From November 2010 to October 3, 2024, no defendant ever notified Plaintiff of any belief that he was under-performing, was deficient in his work performance, nor was issued any warnings by anyone from the ALVANON GROUP. On or about October 31, 2019, Joe Fittipaldi ("Fittipaldi"), the CFO and General Manager of ALVANON at the time, notified Plaintiff that the ALVANON GROUP was introducing a new commission plan which changed the prior flat commission by reclassifying business as old versus new. This was done at varying rates. Plaintiff did not agree to this new change to the commission structure, nor did he authorize deductions from his compensation. On or about August 29, 2022, at the direction of Janice Wang, Fittipaldi advised Plaintiff that certain accounts classified as uniforms/ military were going to be taken away from him and would be transferred to another sales employee in the middle a commissionable quarter beginning on September 1, 2022. This unilateral transfer of Plaintiff's accounts was retroactive as the transfer was in the middle of a

---

[2] Although vendors were serviced only by ALVANON HK; Plaintiff worked directly with the brands and only provided administrative support with respect to the vendors.

commissionable quarter which included a draw. Plaintiff did not agree in any writing[3] to remove these accounts during the middle of a commissionable quarter with anyone from the ALVANON GROUP nor did he authorize anyone at the ALVANON GROUP to make deductions from his compensation as to this new commission structure (the "New Plan").

On or about August 2022, Mr. Magner met with Fittipaldi to discuss the losses Plaintiff would and did incur by the New Plan compared to the prior plan on a similar revenue basis. At that time, Mr. Magner told Fittipaldi that the way the ALVANON GROUP recognized new business was arbitrary because Plaintiff had no control over the time when the vendors placed and paid for their orders to ALVANON GROUP. During that meeting, through a spreadsheet Plaintiff showed Fittipaldi the lost commissions Mr. Magner had incurred by Defendants' unilateral implementation of the New Plan. In response, Fittipaldi said that he would speak with Jason Wang about Plaintiff's concerns. No defendant herein reversed the decision to issue the New Plan, and as result, Mr. Magner lost, at a minimum, approximately 1.5% (or, approximately $125,300.79) of his commissions.

On January 22, 2023, Fittipaldi told Plaintiff that the ALVANON GROUP would be deducting $4,500.00 from Plaintiff's future commissions in quarters 1 and 2 of 2023 which were previously paid to Mr. Magner because he was paid on the Department of Defense account during the middle of a commissionable quarter. At no time did Mr. Magner authorize anyone from the ALVANON GROUP to make deductions from his compensation for this deduction. In or about April 2023, in a meeting with Jason Wang, Plaintiff stated he didn't see any path of what he was making before because of the way the new business was recognized. Jason Wang stated that

---

[3] At no time while Plaintiff was employed by the ALVANON GROUP was there a signed commissions agreement.

something to the effect of - "[I] will look into it". As to the terms of all the various commission schemes which the ALVANON GROUP rolled out, Plaintiff did not authorize anyone at the ALVANON GROUP to make any deductions from his commissions. In or about early April 2024, in a meeting, Eric Lee told Mr. Magner that the decision was made by Jason Wang that Plaintiff would have to share his commissions on one of Mr. Magner's accounts (Calvin Klein) with another ALVANON GROUP employee located in the Europe because it was re- classified as "global" for the 1st quarter forward of 2025 (the "New Plan II"). Plaintiff rejected the mandate because there was no material change in Plaintiff's sales territory since the Calvin Klein account still remained in Plaintiff's sales territory. ALVANON GROUP's distribution of accounts amongst its sales people was defined based on different geographic territories, and there was no cross-selling between territories. Plaintiff refused to accept this unilateral change to the commission structure by the ALVANON GROUP and Janice Wang, Jason Wang and Lee since this would and did further reduce Mr. Magner's commissions.

On or about April 19, 2024, in a meeting with Lee, Lee yelled at Plaintiff that "[the change in the new commission plan] was non-negotiable".  On or about the same time, Plaintiff learned that Lee had stated to a colleague something to the effect of – "in a year from now, the company will look very different; Ralph will be retired, and [Mr. Magner] will be gone". In or about May of 2024, Lee began to monitor Plaintiff's outgoing and incoming emails for the first time. On   or about July 22, 2024, Plaintiff received a report of clients' payments for orders, but no sales person was listed for the Calvin Klein/PVH account (which was Plaintiff's account). Historically, Plaintiff's name was always identified with this account.

On October 3, 2024, as per Janice Wang's and Jason Wang's directive, *in an in- person meeting with Lee at the ALVANON GROUP's NYC Office with Serrant and Lee*, Plaintiff was told

that his employment with the ALVANON GROUP was terminated. At the time of termination, no defendant gave any notice to Plaintiff under NY LL § 195(6) nor notice that Plaintiff had a right to file an application for unemployment benefits under 12 NYCRR § 472.8. During the meeting, Mr. Magner asked for the identity of those in the ALVANON GROUP who made the decision to terminate him. In reply, Eric Lee stated that something to the effect of - "the decision was [Lee's] and the Company's". Plaintiff then asked Lee something to the effect of – "is the Company [you're referring to] the Wang family?", Lee confirmed that this was so. Within hours of Plaintiff's termination, Lee met with Ralph Ehinger, Sr. Regional Director, Americas of the ALVANON GROUP. In that meeting. Lee unveiled a new ALVANON GROUP commission plan for which sales commissions would be discounted at .5%. Within hours of Plaintiff's termination, Lee met with Ralph Ehinger, Sr. Regional Director, Americas of the ALVANON GROUP. Ehlinger verbally rejected this new unilateral commission plan, to which Lee told him that he would have to address it when Janice Wang was coming to New York. Soon thereafter, Ehinger met with Janice Wang, in which she stated something to the effect of - "*how long do you consider working [here]* because we didn't expect you to be working that long *[and we] don't have you allocated in the budget"*.

## **LEGAL ARGUMENT**

### STANDARD FOR A MOTION TO DISMISS UNDER FED.R.CIV.PRO. 12(b)(1)

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. Qian v Siew Foong Hui, 2012 US Dist LEXIS 75181, at *4-5 [SDNY May 30, 2012]) In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. Id. The Court must accept as

true the factual allegations contained in the Complaint, but it will not draw argumentative inferences in favor of Plaintiff because subject matter jurisdiction must be shown affirmatively. Id. Plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Id.* (citing *Zaldivar v. Anna Bella's Cafe, LLC*, No. 11-CV-1198 JS ETB, 2012 U.S. Dist. LEXIS 25695, 2012 WL 642828, at *2 (E.D.N.Y. Feb. 28, 2012)) (internal citations and quotations  [*5] omitted).

## STANDARD OF MOTION TO DISMISS UNDER FED.R.CIV.PRO 12(b)(6)

A party may assert, by motion, the defense of "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Danusiar v Auditchain USA, Inc., 2020 US Dist LEXIS 186941, at *18-19 (SDNY Oct. 8, 2020, No. 20-CV-1477 (KNF)). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Conclusory allegations that the defendant violated the standards of law do not satisfy the need for plausible factual allegations." *Danusiar*, 2020 US Dist LEXIS 186941, at *18-19 (citing *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 191 (2d Cir. 2010). On a motion pursuant to Rule 12(b)(6), *all facts alleged in the complaint are assumed to be true and all reasonable inferences are drawn in the plaintiff's favor. Danusiar*, 2020 US Dist LEXIS 186941, at *18-19 "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Id.*

A. THE COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S NYLL CLAIMS.

   1. THE PRESUMPTION OF THE NYLL IS OVERCOME BY NEWYORK'S CHOICE OF LAW ANALYSIS

      a. New York Choice of Law

The presumption against extraterritorial application of the NYLL *does not control in all circumstances*. Solouk v Eur. Copper Specialties, Inc., 2019 US Dist LEXIS 81267, at *47-49 [SDNY May 2, 2019, No. 14cv8954 (DF)]) (emphasis added).  In *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 644 N.E.2d 1001, 620 N.Y.S.2d 310 (1994), the plaintiff, a New York resident who was injured on a job site in Massachusetts that was owned by a New York corporation, sued the corporation for alleged violations of the provisions of the [NYLL] that require adequate safety measures at a worksite. *Solouk*, 2019 US Dist LEXIS 81267, at *47-49.

The New York Court of Appeals declined to adopt an absolute bar to suit based on the fact that the work was performed out-of-state [sic], and instead applied *New York choice-of-law principles to determine that, on the particular tort claim at issue,* Massachusetts had the greater interest, and thus its law should control *Id.* (emphasis added) *Padula, 84 N.Y.2d 519* at 521-23.

In *Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*, the Eastern District denied the defendant's motion for summary judgment on the issue of the extraterritorial reach of the statute, on the ground that the defendant had failed to make the choice-of-law analysis called for by *Padula*, and thus had not carried its burden. Heng Guo Jin v. Han Sung Sikpoom Trading Corp. 2015 U.S. Dist. LEXIS 125961, 2015 WL 5567073 (E.D.N.Y. Sept. 21, 2015) (where the

plaintiff, a delivery driver who had made deliveries both in and out of state for his New-York-based employer, claimed minimum wage and overtime violations under the NYLL. _Id._ (noting that the court in _Padula_ declined to "apply a bright-line rule against [the] application of the NYLL to any conduct taking place outside New York state," _but rather "engaged in a more flexible analysis," based on choice-of-law rules_) (emphasis added).

In _Liang Rui Pang v Flying Horse Trucking Co._, 2023 N.Y. Misc. LEXIS 8692, at *7-9 (Sup Ct, Queens County 2023), the defendants did not establish that as a matter of law, the [NYLL] should not apply. Liang Rui Pang v Flying Horse Trucking Co., 2023 N.Y. Misc. LEXIS 8692, at *7-9 (Sup Ct, Queens County 2023). Courts have applied a choice-of-law analysis to help determine if New York Labor Law should apply to a case. _Id._ (see _Padula v Lilarn Props. Corp._, 84 N Y2d 519, 644 N.E.2d 1001, 620 N.Y.S.2d 310 [ 1994]; _Soluk v European Cooper Specialties, Inc_., 2019 U.S. Dist. LEXIS 81267, 2019 WL 2181910 [SDNY 2019]; _Heng Guo Ji v Han Sung Sikpoom Trading Corp._, 2015 U.S. Dist. LEXIS 125961, 2015 WL 5567073 [ED NY 2015]).

Applying this choice-of-law analysis led to the conclusion that New York Labor Law applied in that case. _Liang Rui Pang_, 2023 N.Y. Misc. LEXIS 8692, at *7-9 ("[w]hile defendants argue that plaintiff's spent most of his time outside of New York circling the country, they did not establish _that his contacts with New York were insufficient enough to warrant not applying [NYLL]_ where [there were] _more significant contacts with the State of New York, than to any other state")_ (emphasis added) (citing _Pierre v Gts Holdings, Inc._, 2015 U.S. Dist. LEXIS 160345, 2015 WL 7736552 [SDNY 2015]).

The court in _Liang Rui Pang_ stated that "if defendants' analysis were to hold, plaintiff would not have enough contacts with any single state _and no state's labor law would apply to_

*this action*". _Liang Rui Pang_, 2023 N.Y. Misc. LEXIS 8692, at *7-9 ("defendants have failed to establish that their motion to dismiss on this ground should be granted").

"New York courts have adopted a flexible choice of law approach and 'seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute.'" _Pierre v GTS Holdings, Inc._, 2015 US Dist LEXIS 160345, at *5-10 [SDNY Nov. 30, 2015]) (citing _White Plains Coat & Apron Co. v. Cintas Corp._, 460 F.3d 281, 284 (2d Cir. 2006) (quoting _Lazard Freres & Co. v. Protective Life Ins. Co._, 108 F.3d 1531, 1539 (2d Cir. 1997)).

In contract cases, New York courts apply the "center of gravity" or "grouping of contacts" approach, under which courts consider the "spectrum of significant contacts," including "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties." _Pierre_, 2015 US Dist LEXIS 160345, at *5-10.

In tort cases, New York courts apply the "greater interest" test, whereby courts apply "the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." _Id._ (citing _Schultz v. Boy Scouts of Am., Inc._, 65 N.Y.2d 189, 480 N.E.2d 679, 683, 491 N.Y.S.2d 90 (N.Y. 1985) (quoting _Babcock v. Jackson_, 12 N.Y.2d 473, 191 N.E.2d 279, 283, 240 N.Y.S.2d 743 (N.Y. 1963)).

The question is which framework—contract or tort—should apply to plaintiff's statutory wage-and-hour claims. _Pierre_, 2015 US Dist LEXIS 160345, at *5-10. In tort [4] cases, *the interest of the state in regulating tortious conduct and allocating damages predominates*. _Id._ (emphasis added). In _Pierre_, the court found that plaintiff's statutory wage-and-hour claims are more like

---

[4] "The local law of the state which has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort" (Restatement, Second, Conflict of Laws, § 379[1]

tort claims *because they concern conduct regulation. Id.* ("the *New York labor laws that give rise to those claims regulate employers' conduct vis-à-vis their employees* [citing] [NYLL] §§ 193 (prohibiting unauthorized deductions from wages), 196-d (prohibiting retention of gratuities . . . [a]s such, the court considered [plaintiff's] statutory claims under the greater-interest framework") (emphasis added).

In the case at bar, New York has a significant interest in regulating tortious conduct and allocating damages predominates as against ALVANON. *Pierre*, 2015 US Dist LEXIS 160345, at *5-10. He claims that defendants owe him approximately $125,000.00 in unpaid commissions. Moreover, he worked for ten (10) years in the N.Y. Office for the ALVANON Group until 2020, and then, as a remote employee for four (4) years making sales for Defendants. Defendants' intent to have New York state law is evident by his signing an NDA with New York State Law as the choice of law.

Moreover, defendants ALVANON HK and ALVANON are not registered foreign corporations in Pennsylvania, but rather, are registered in New York. All business and personnel decisions, including the amount of commissions which are paid to Mr. Magner were made by the ALVANON GROUP, not in Pennsylvania, but rather in New York and Hong Kong. Plaintiff's sales territory included New York State, and not Pennsylvania. Furthermore, ALVANON paid Mr. Magner applied New York State and New York City taxes as to his compensation, not Pennsylvania taxes. Lastly, Plaintiff's termination was conducted in person at ALVANON's office in New York.

In sum, as in *Pierre*, where the court found that plaintiff's New York statutory wage-and-hour claims are more like tort claims conduct regulation as between NYS employers and employees. *Pierre*, 2015 US Dist LEXIS 160345, at *5-10 ("the New York labor laws that give

rise to those claims regulate employers' conduct vis-à-vis their employees [citing] [NYLL] §§ 193 (prohibiting unauthorized deductions from wages.

The cases cited by Defendants in support of their claim that the NYLL not be applied extraterritorial are significantly different than Mr. Mager's case. In *Goshen v. Mut. Live Ins. Co. of N.Y.*, 730 N.Y.S.2d 46, 47(App. Div. 1st Dep't 2001), an action made pursuant to General Business Law § 349, the case found that non-New York consumers who entered into transactions outside the State cannot bring actions pursuant to General Business Law § 349. Goshen v. Mut. Live Ins. Co. of N.Y., 730 N.Y.S.2d 46, 47(App. Div. 1st Dep't 2001). In *Warman v. Am. Nat'l Standards Institute*, a Canadian citizen never worked in NY nor remotely for a New York company, unlike, in Mr. Magner's case worked who worked remotely worker for ALVANON in New York, used to live and reside in NY, and paid NYS and NYC taxes, whose sales territory including New York, and not Pennsylvania. *Warman*, 2016 WL 3676681, at *3.

In *O'Neill v. Mermaid Touring, Inc.*, plaintiff served as a personal assistant to Lady Gaga and toured throughout the country. *See* 968 F. Supp. 2d 572, 574-75(S.D.N.Y. 2013). There, unlike the case at where Mr. Magner's labor was done in behalf of ALVANON, whose principal office is in New York, the plaintiff in *O'Neill* worked for an artist/ celebrity in multiple states and followed her to various locations to assist her. In *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 469 (S.D.N.Y. 2013)., Mr. Magner's case isn't solely based on solely based defendant's incorporation of defendant in New York. *Kassman*, 925 F. Supp. 2d at 469.

Thus, based on the particular circumstances and significant contacts with ALVANON in New York as elaborated above, it is respectfully submitted that the any extraterritorial aspect of Plaintiff's NYLL claims do not apply here, and that the Court has subject matter jurisdiction under Fed.R.Civ.Pro. 12(b)(1).

### B. PLAINTIFF HAS ADEQUATELY PLED CLAIMS FOR UNPAID COMMISSIONS UNDER NYLL sec. 193, QUANTUM MERUIT, AND UNJUST ENRICHMENT

#### 1. UNAUTHORIZED DEDUCTIONS UNDER NYLL sec. 193

The NYLL restricts an employer's authority to take deductions from an employee's earnings, providing that an employer may only deduct an amount from an employee's wages if "such deductions are either 'made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency,' or 'expressly authorized in writing by the employee and are for the benefit of the employee.'" Karic v Major Auto. Cos., 992 F Supp 2d 196, 202 [EDNY 2014]) (where plaintiff's NYLL sec. 193 survived summary judgment) (citing _Perez v. Westchester Foreign Autos, Inc._, 2013 U.S. Dist. LEXIS 35808, [WL] at *10 (S.D.N.Y. 2013) (quoting NYLL § 193(1)).

Furthermore, "if an employee is paid on a commission basis, New York law permits deductions made before—but not after—the commissions were earned." _Karic_, 992 F Supp 2d 196, 202. "The purpose of § 193 is to prohibit employers from making unauthorized deductions from wages [and therefore] to place the risk of loss for such things as damaged, spoiled merchandise, or lost profits on the employer." _Id._ (citing _Maldonado v. La Nueva Rampa, Inc._, 2012 U.S. Dist. LEXIS 67058, 2012 WL 1669341, at *8 (S.D.N.Y. 2012).

Here, it is undisputed that Mr. Magner never authorized any Defendant to make deductions from his salary/ commissions. As to the terms of all the various commission schemes which the ALVANON GROUP rolled out, Plaintiff did not authorize anyone at the ALVANON GROUP to make any deductions from his commissions. In or about early April 2024, in a

meeting, Eric Lee told Mr. Magner that the decision was made by Jason Wang that Plaintiff
would have to share his

commissions on one of Mr. Magner's accounts (Calvin Klein) with another ALVANON GROUP
employee located in the Europe because it was re- classified as "global" for the 1st quarter
forward of 2025 (the "New Plan II"). Thus, these changes, made retroactively, constituted
unauthorized deductions in an amount of approximately $125,000.00 from his wages/ deductions
in violation of NYLL § 193.

2.  *QUANTUM MER*UIT AND UNJUST ENRICHMENT

When an agreement is unenforceable or there is no contract, a party may recover for
services performed on a *quantum meruit* basis. <u>Barbagallo v Marcum LLP</u>, 925 F Supp 2d 275,
297 [EDNY 2013]) (citing <u>*Clark-Fitzpatrick, Inc. v. Long Island Railroad Co.*</u>, 70 N.Y.2d 382,
388, 516 N.E.2d 190, 521 N.Y.S.2d 653 (N.Y. 1987) ("A 'quasi contract' [quantum meruit] only
applies in the absence of an express agreement, and is...a legal obligation imposed in order to
prevent a party's unjust enrichment."). <u>*Barbagallo*</u>, 925 F Supp 2d at 297 (citing <u>*Longo v. Shore
& Reich, Ltd.*</u>, 25 F.3d 94, 98 (2d Cir. 1994) ("In the absence of a contract that had become
effective, [plaintiff] is entitled to *quantum meruit* recovery.... *[q]uantum meruit* is a doctrine of
quasi contract.").

A party's compensation under this doctrine is measured by the reasonable value of the
services provided. <u>*Barbagallo*</u>, 925 F Supp 2d at 297 (citing <u>*Gould v. Lightstone Value Plus Real
Estate Investment Trust, Inc.*</u>, 301 Fed.Appx. 97, 97 (2d Cir. 2008) ("In order to recover in
quantum meruit under New York law, a claimant must establish...the reasonable value of the
services.")  (quoting <u>*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*</u>, 418
F.3d 168, 175 (2d Cir. 2005)).

In *Karter v Longevity Health Servs. LLC*, 2024 NY Slip Op 32542[U], *5 [Sup Ct, NY County 2024]), the court found that Plaintiff's unjust enrichment and *quantum meruit* claims are not duplicative of her New York Labor Law claims. Karter v Longevity Health Servs. LLC, 2024 NY Slip Op 32542[U], *5 [Sup Ct, NY County 2024]). In *Karter*, similar to the case at bar, Plaintiff is seeking statutory penalties and compensation for unpaid wages in her NYLL claims but is seeking the reasonable value of her services in her unjust enrichment and quantum meruit claims. Moreover, as these claims are pled in the alternative, it would be premature to dismiss them as they may be viable alternatives for recovery in the event Plaintiffs NYLL claims are dismissed on summary judgment. *Karter*, 2024 NY Slip Op 32542[U] (citing *Sosnowy v A. Perri Farms, Inc.*, 764 F.Supp2d 457 [EDNY Feb. 10, 2011]; *see also Kaur v Royal Arcadia Palace, Inc.*, 643 F.Supp.2d 276, 297 [EDNY Dec. 27 2007] [*denying dismissal of unjust enrichment claim because it was pled in the alternative and would be adjudicated if statutory claims were dismissed]*) (emphasis added).

As stated above, Mr. Magner provided fourteen (14) years of work for the ALVANON GROUP and expects to obtain a reasonable value of the work and services he provided for it in the absence of any agreement between the parties except for an NDA.

Therefore, the Court should not dismiss these claims under Fed.R.Civ.Pro. 12(b)(6).

Thus, on behalf of Mr. Magner, and for the reasons stated above, the undersigned asks that the Court deny Defendants' motion to dismiss in its entirety.

Date:  May 2, 2025
        Cornwall, New York          Respectfully Submitted,

                                  By: _// Jimmy M. Santos_
                                  Jimmy M. Santos, Esq.
                                  Law Offices of Jimmy M. Santos, PLLC
                                  28 Wilson Place
                                  Cornwall, New York 12518
                                  Phone: (845) 537-7820
                                  _Attorneys for Plaintiff_