USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/26/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FREDERICK MAGNER,

            Plaintiff,

        -against-

ALVANON, INC., ALVANON HK, LTD, JANICE
WANG, in her corporate capacities as CEO of Alvanon,
Inc. and Alvanon HK, LTD and in her individual
capacity, JASON WANG, in his corporate capacity as
COO of Alvanon HK, LTD and Alvanon, Inc. and in his
individual capacity, ERIC LEE, in his corporate capacity
as Executive Director of Alvanon, Inc. and in his
individual capacity, and AGNES SERRANT, in her
corporate capacity of General Manager/HR of Alvanon,
Inc. and in her individual capacity,

            Defendant.

1:24-cv-09190-MKV

ORDER GRANTING IN PART
AND DENYING IN PART
MOTION TO DISMISS

---

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Frederick Magner was employed as a commissioned salesperson by Defendants
Alvanon, Inc. and Alvanon HK, Ltd. from 2010 until his termination in 2024.  In this diversity
action, Plaintiff brings claims for allegedly unpaid commissions, wage deductions, and retaliation
under the New York Labor Law ("NYLL"), as well as claims under the common law theories of
*quantum meruit* and unjust enrichment for allegedly unpaid commissions and deductions.
Defendants have moved to dismiss Plaintiff's operative Amended Complaint in its entirety.  [ECF
No. 33].  The Court is in receipt of Defendants' Memorandum of Law ("Mem.") in support of its
motion [ECF No. 35], Plaintiff's Opposition ("Opp'n"), [ECF No. 46], and Defendants' Reply
("Reply"), [ECF No. 47].

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in
part.

1

## BACKGROUND[1]

Alvanon Inc. is located in New York City and "is a corporation registered in Delaware [and] New York[.]" [ECF No. 32 ("Amended Complaint" or "Am. Compl.") ¶¶ 2-3]. Alvanon HK, Ltd. "was created and/or registered [] under the laws of the Cayman Islands[]" and is located in Hong Kong. *Id.* ¶ 6 (alterations added). Alvanon Inc. together with Alvanon HK, Ltd. (collectively "Alvanon") is in the mannequin business and touts itself as "a global innovations company that helps apparel brands improve their fit to reflect modern-day consumers." *Id.* ¶ 13. At all relevant times, Defendant Janice Wang was Alvanon's Chief Executive Officer, Defendant Jason Wang was Alvanon's Chief Operations Officer, Defendant Eric Lee was an executive director for Alvanon, and Defendant Agnes Serrant served various roles, including Director of Finance, and "*de facto* Human Resources and General Manager" for Alvanon. *Id.* ¶¶ 7, 14-16. Plaintiff alleges that "[a]ll defendants conduct substantial business in" New York. *Id.* ¶ 21.

Plaintiff was hired by Alvanon as a commissioned salesperson in 2010. *Id.* ¶ 25. When he was hired, Alvanon required Plaintiff to execute a Non-Disclosure Agreement ("NDA"), which included a New York choice of law provision. *Id.* ¶ 29. The terms of his employment were never reduced to writing. *Id.* ¶ 30. Plaintiff moved to Pennsylvania in October 2020 and is a current Pennsylvania resident. *Id.* ¶¶ 1, 27. He has conducted all his work remotely in Pennsylvania, with equipment provided by Alvanon, beginning when he moved there until his termination in 2024. *Id.* ¶¶ 27, 34. Prior to moving to Pennsylvania, he lived and worked in New York. *Id.* ¶ 26.[2] At

---

[1] The facts as stated herein are based on Plaintiff's allegations in the Amended Complaint, [ECF No. 32], and are accepted as true for the purpose of the pending motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] While Plaintiff contradictorily alleges that he lived and worked in New York until approximately two years prior to his termination, *compare id.* ¶ 26 *with id.* ¶ 27, Plaintiff confirmed in his opposition that he moved to Pennsylvania and worked there remotely from 2020 onwards, Opp'n at 1-2 ("Prior to 2020, Plaintiff resided in New York, New York. . . . In or around October 2020, Plaintiff moved to Pennsylvania[.]").

all relevant times, Alvanon "taxed Plaintiff as a New York State and/or New York City employee." *Id.* ¶ 32.   Plaintiff's sales territory included the entire State of New York.  *Id.* ¶ 36.

The crux of Plaintiff's Amended Complaint concerns changes to his employment that allegedly affected his commission-based compensation.  First, in October 2019, Plaintiff was notified that Alvanon was introducing a new commission structure—*i.e.*, the "New Plan"—which changed the commission rate at which he would be compensated.  *Id.* ¶¶ 38, 42.  Plaintiff did not agree to the change but does not claim the New Plan had retroactive effect.  *Id.* ¶ 39.  Plaintiff objected to the New Plan at a meeting in 2022 and discussed the losses it purportedly would and allegedly did cause.  *Id.* ¶¶ 43-46.  Plaintiff claims the New Plan caused him to lose roughly $125,000.00 in commissions from 2020 to 2024.  *Id.* ¶¶ 48, 71.  Second, in August 2022, Plaintiff was informed that certain client accounts classified as uniforms/military were going to be transferred to another sales employee and that the transfer was "retroactive as the transfer was in the middle of a commissionable quarter[.]"  *Id.* ¶¶ 40-41.  Third, in January 2023, Alvanon informed him that it "would be deducting $4,500.00 from [his] future commissions in quarters 1 and 2 of 2023 which were previously paid to [him] because he was paid on the Department of Defense account during the middle of a commissionable quarter[.]"  *Id.* ¶ 49 (alterations added).[3] Fourth, in April 2024, Alvanon forced him to share commissions on one of his accounts (Calvin Klein) with another employee "because it was re-classified as 'global' for the 1st quarter forward of 2025[.]"  *Id.* ¶ 53.  Fifth, in July 2024, he "received a report of clients' payments for orders" on the Calvin Klein/PVH account, which historically was his account, but his name was no longer identified with the account.  *Id.* ¶ 60.

---

[3] While Plaintiff's description of this deduction is confusing, the Court, in viewing the allegation in the light most favorable to Plaintiff, interprets this as an allegation that Defendants retroactively deducted commissions that Plaintiff had earned.  This is also in line with Defendants' own interpretation of this allegation.  *See* Mem. at 3.

3

Plaintiff objected to these changes to his compensation. *Id.* ¶¶ 39, 42, 50, 52, 54, 56.[4]  In an April 2024 meeting, Defendant Lee yelled at Plaintiff that the new commission plan was non-negotiable. *Id.* ¶ 57.  Defendant Lee then began to monitor Plaintiff's emails. *Id.* ¶ 59.  Ultimately, Plaintiff was terminated on October 3, 2024 at an in-person meeting in New York. *Id.* ¶¶ 35, 61.

In this action, Plaintiff brings six counts all predicated on New York Law,[5] with each count pertaining to some or all of Defendants. *Id.* ¶¶ 77-91.  In Counts One and Two,[6] Plaintiff asserts claims under the NYLL for allegedly unpaid commissions and wage deductions. *Id.* ¶¶ 77-80.  In Counts Three and Four,[7] Plaintiff asserts claims under the NYLL for retaliatory discharge after objecting to Defendants' allegedly unlawful deductions. *Id.* ¶¶ 81-84.[8]  Counts Five and Six assert claims for *quantum meruit* and unjust enrichment respectively against only Alvanon Inc. and Alvanon HK, Ltd. (and not any individual Defendants) for the alleged non-payment of roughly $125,000.00 in commissions and the allegedly unlawful "charge back of $4,500[.]" *Id.* ¶¶ 85-91.

Pending before the Court is Defendants' motion to dismiss the Amended Complaint in its entirety.  [ECF No. 33].  Defendant moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) principally arguing Plaintiff has failed to state a claim or alternatively lacks standing to assert his claims under the NYLL.  Mem. at 6-10.  Defendant also argues that Plaintiff has failed

---

[4] Plaintiff does not specifically allege that he objected to the fact that no salesperson was listed on an account that was historically his. *See id.* ¶ 60.

[5] The counts in Plaintiff's Amended Complaint are numbered redundantly making it appear as if there are only five counts, when in reality, it lists six separate counts. *Id.* ¶¶ 77-91.

[6] Count One names Alvanon, Inc., Alvanon HK, Ltd., Janice Wang, Jason Wang, and Eric Lee, and Count Two names Janice Wang and Jason Wang. *Id.* ¶¶ 77-80.

[7] Count Three names all Defendants and Count Four names Janice Wang and Jason Wang. *Id.* ¶¶ 81-84.

[8] The Court notes that for Counts Two and Four, Plaintiff references N.Y. Bus. Corp. Law §630 and N.Y. LLC Law §609 as bases for liability of Defendants Janice Wang and Jason Wang for violations of the NYLL. Am. Compl. ¶¶ 80, 84.

to state a claim under the common law theories of *quantum meruit* and unjust enrichment. Mem. at 10-12.

## STANDARD OF REVIEW

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it[.]" *Conn. Parents Union v. Russell-Tucker,* 8 F.4th 167, 172 (2d Cir. 2021) (citation omitted). A plaintiff must "allege facts that affirmatively and plausibly suggest that" the court has subject matter jurisdiction, and "courts need not credit a complaint's conclusory statements without reference to its factual context." *Id.* In evaluating a motion to dismiss for lack of subject matter jurisdiction this court is "not to draw inferences from the complaint favorable to" Plaintiff. *J.S. ex rel. N.S. v. Attica Central Sch.*, 386 F.3d 107, 110 (2d Cir. 2004); *but see Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015) (in assessing standing the court accepts "as true all material allegations of the complaint and construe[s] the complaint in favor of the complaining party.") (alteration added) (cleaned up).

To survive a motion to dismiss pursuant for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The "plausibility standard" articulated in *Iqbal* "is not akin to a 'probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting

5

*Twombly*, 550 U.S. at 557).  In reviewing a motion to dismiss, the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  However, this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.      Plaintiff's New York Labor Law Claims

#### A.  Extraterritoriality

Defendants move to dismiss Plaintiff's NYLL claims pursuant to Rules 12(b)(1) and/or 12(b)(6) arguing that the NYLL does not apply extraterritorially to Plaintiff, who lived and worked exclusively in Pennsylvania during the events that give rise to those claims.  Defendant therefore contends that Plaintiff fails to state a claim or alternatively lacks standing thereby depriving this Court of subject matter jurisdiction.  Mem. at 6-9.  Plaintiff argues that the bar to the extraterritorial reach of the NYLL is not absolute and points to several courts that have conducted a choice-of-law analysis to determine whether the NYLL should apply.  Opp'n at 8-12.  Plaintiff argues that a choice-of-law analysis demonstrates that New York law should apply here.  *Id.*

As an initial matter, while Defendants alternatively move under Rule 12(b)(1), the Amended Complaint alleges, Am. Compl. ¶ 24, and the parties do not dispute, that the Court has subject matter jurisdiction over this case based on diversity jurisdiction.  But more importantly, the Court notes that the propriety of dismissal of Plaintiff's NYLL claims for lack of standing under Rule 12(b)(1) based on an extraterritoriality argument is far from clear.

The Supreme Court has explained in a different context that extraterritoriality is a "merits question" and does not "raise a question of subject-matter jurisdiction."  *Morrison v. Nat'l*

6

*Australia Bank Ltd.*, 561 U.S. 247, 253-54 (2010) (discussing extraterritorial claims under § 10(b) of the Securities Exchange Act of 1934).  Moreover, New York state courts appear to treat extraterritorial claims under the NYLL as merits questions, *see Kingston v. Int'l Bus. Machines Corp.*, 187 A.D.3d 578, 579, 135 N.Y.S.3d 9 (1st Dep't 2020) (finding plaintiff failed to state a claim under the NYLL for work performed outside the state); *Rodriguez v. KGA Inc.*, 155 A.D.3d 452, 453, 64 N.Y.S.3d 11 (1st Dep't 2017) (same), but treat extraterritorial claims under the New York State and New York City Human Rights laws, in contrast, as raising subject-matter jurisdiction issues, *see Kingston,* 187 A.D.3d at 579 (no jurisdiction over New York State and New York City Human Rights law claim while plaintiff lived and worked in Texas); *Jarusauskaite v. Almod Diamonds, Ltd.*, 198 A.D.3d 458, 152 N.Y.S.3d 579 (1st Dep't 2021) (no jurisdiction because defendants' alleged conduct occurred while Plaintiff was physically outside New York); *Pakniat v. Moor*, 192 A.D.3d 596, 145 N.Y.S.3d 30 (1st Dep't 2021) (same).[9]  In any event, the Court need not resolve this legal question here, since, as discussed below, the Court concludes Plaintiff has sufficiently plead at least some non-extraterritorial claims under the NYLL.

Turning to the merits of Defendants' extraterritoriality argument, under New York law it is a "'settled rule of statutory interpretation [] that unless expressly stated otherwise, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state . . . enacting it.'"  *O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 578 (S.D.N.Y. 2013) (quoting *Goshen v. Mut. Lif. Ins. Co. of N.Y.*, 286 A.D.2d 229, 230, 730 N.Y.S.2d 46, 47 (1st Dep't 2001) (alterations and ellipsis in original).  Thus, courts in this district have routinely held that the NYLL "does not

---

[9] Indeed, the only other court to explicitly address this standing issue in a similar context noted it was a "complicated question" but declined to resolve the issue noting that the "Court's analysis and conclusions would be the same under either" Rule 12(b)(1) or (b)(6).  *Stashak v. Phreesia, Inc.*, No. 25-CV-3808 (JMF), 2026 WL 249631, at *3 n.3 (S.D.N.Y. Jan. 30, 2026) (noting that whether extraterritorial applications of New York law pose a bar to a federal court's subject matter jurisdiction over New York law claims is a "complicated question").

apply extraterritorially" to work performed outside of New York. *Warman v. American Nat'l Standards Inst.*, No. 15-CV-5486 (RA), 2016 WL 3676681, at *2 (S.D.N.Y. July 6, 2016) (collecting cases); *see also Smith v. Vera Inst. of Just., Inc.*, No. 21 CV 6430 (DG) (CLP), 2023 WL 11879682, at *15 (E.D.N.Y. Aug. 11, 2023); *O'Neill,* 968 F. Supp. 2d at 579 (finding NYLL applies only to those "laboring in New York").

Plaintiff is correct in so far as the bar to the "extraterritorial application of the NYLL does not control in all circumstances." *Solouk v. Eur. Copper Specialties, Inc.*, No. 14CV8954 (DF), 2019 WL 2181910, at *16 (S.D.N.Y. May 2, 2019); *see also Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 521-23, 644 N.E.2d 1001, 1002-03, 620 N.Y.S.2d 310, 311-12 (1994) (conducting choice of law analysis to determine if tort-like claims pursued under various safety-standard provisions of the NYLL applied to a New York Plaintiff's injury that occurred at a New York employer's work-site in Massachusetts). However, courts that have conducted a choice-of-law analysis to determine which state labor law applies do so generally for employees who work contemporaneously in multiple states—*i.e.*, "who, in the course of their work, regularly cross state lines." *Hobbs v. Knight-Swift Transportation Holdings, Inc.*, No. 1:21-CV-01421 (JLR) (SDA), 2024 WL 5119235, at *5 n.7 (S.D.N.Y. Sept. 6, 2024), *report and recommendation adopted*, No. 1:21-CV-01421 (JLR), 2025 WL 1577271 (S.D.N.Y. June 4, 2025) (collecting cases); *Kim v. Fam. Bob Inc.,* No. 20-CV-906 (ENV), 2021 WL 7906544, at *5 (E.D.N.Y. Jan. 26, 2021) ("Claims arising under the NYLL concern conduct regulation and, where the work occurs in more than one state, a New York choice-of-law analysis is appropriate to determine whether New York is the jurisdiction with the greater interest in the dispute, such that New York law applies.") (citing *Padula*, 84 N.Y. 2d at 521-23).

8

In contrast, NYLL claims are routinely dismissed where they are "premised almost exclusively on work performed outside of" New York.  *Kingston*, 187 A.D.3d at 579; *see also Rodriguez*, 155 A.D.3d at 452; *Dittes v. ChargeAfter USA, Inc.*, No. 24-CV-746 (RA), 2025 WL 1984273, at *4 (S.D.N.Y. July 17, 2025); *Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*, No. 13-CV-6789 CBA LB, 2015 WL 5567073, at *9 (E.D.N.Y. Sept. 21, 2015) (noting the "uncontroversial proposition that" the NYLL does "not reach work done entirely and exclusively outside" New York); *Stashak*, 2026 WL 249631, at *6 ("The NYLL is even more limited in its application: [i]t does not apply extraterritorially to work performed outside of New York, full stop.") (citation omitted).

Plaintiff's cited cases confirm that a choice-of-law analysis is typically appropriate only when the employees labor in multiple states contemporaneously.  *See Heng Guo*, 2015 WL 5567073 at * 9 (denying motion to dismiss NYLL claims where a New York-based employee nonetheless spent "a substantial part of his workday transporting goods out-of-state"); *Solouk*, 2019 WL 2181910, at *1-2, *16 (applying choice-of-law analysis and declining to preclude recovery under the NYLL for Plaintiffs who labored in New York but spent limited time in New Jersey at the beginning and end of each work day); *Pierre v. Gts Holdings, Inc.*, No. 15 CIV. 143 (PAC), 2015 WL 7736552, at *3 (S.D.N.Y. Nov. 30, 2015) (applying New York law pursuant to choice-of-law analysis where plaintiff, a chauffeur, performed the vast majority of his work in New York); *Cf. Liang Rui Pang v. Flying Horse Trucking Co.*, No. 0711921/2022, 2023 N.Y. Misc. LEXIS 8692, at *7-9 (Sup. Ct. Queens County 2023) (declining to dismiss NYLL claims where truck driver plaintiff began and ended his driving route in New York and choice-of-law was not briefed).

Here, Plaintiff has worked and lived exclusively in Pennsylvania since at least October 2020. Am. Compl. ¶ 2. Thus, his claims under the NYLL, to the extent they are premised on alleged conduct that occurred after October 2020,[10] must be dismissed, "full stop." *Stashak*, 2026 WL 249631, at \*6; *see also e.g.*, *Kim*, 2021 WL 7906544, at \*5-6 (dismissing NYLL claims for the period from March 2019 to October 2020, when Plaintiff worked almost all of the time in New Jersey); *Vera Inst.*, 2023 WL 11879682, at \*16.

Plaintiff points to the following allegations to argue that the NYLL should nonetheless apply: (1) that he worked for Alvanon in New York until 2020; (2) the NDA's NY choice of law clause; (3) that Alvanon is registered in New York and all business decisions were made by Alvanon in New York and Hong Kong; (4) Plaintiff's sales territory included New York, not Pennsylvania; (5) that he was being taxed as a New York employee; and (6) that he was fired while in New York. Opp'n at 11. These arguments fail.

First, that Plaintiff worked in New York prior to his move in 2020 does not impact whether he can bring claims under the NYLL for conduct that occurred after 2020 while he worked exclusively in Pennsylvania. *See Kim*, 2021 WL 7906544, at \*5-6.

Second, that the NDA Plaintiff signed, which is not the focus of any claims here, specified that New York law would apply cannot bind the parties to the statutory non-contractual causes of action embodied in the NYLL. *See Warman*, 2016 WL 3676681, at \*3 ("[A] choice-of law provision indicating only that an *agreement* will be governed by New York law will not bind the parties for non-contractual causes of action. . . . [plaintiff employee] thus cannot state a claim under

---

[10] The post-New York conduct that could not form the basis of any NYLL claim thus would include, but is not limited to, Plaintiff's allegations that his firing in 2024 was retaliatory, Am. Compl. ¶ 70, that he had certain client accounts taken away from him in 2022 in the middle of a commission period, *id.* ¶¶ 40-42, that he had $4,500 deducted from his commission in 2023, *id.* ¶ 49, that Alvanon forced him to share commissions on one his Calvin Klein accounts with another employee in 2024, *id.* ¶¶ 53-54, and that he did not receive credit for a sale on the Calvin Klein/PVH account, which historically had been associated with him. *Id.* ¶ 60.

10

NYLL on the basis of the Assessor Agreement's choice-of-law provision.") (italics in original); *see also Meka v. Deloitte LLP*, No. 25 CIV. 3547 (AKH), 2025 WL 3761874, at \*6 (S.D.N.Y. Dec. 30, 2025) ("General choice-of-law provisions do not provide for non-contractual causes of action, including NYLL claims.").

Third, it is of no moment that Defendants maintained their business in New York and made decisions that impacted Plaintiff in New York as it is the location of the employee's labor that controls. *See Kingston*, 187 A.D.3d at 579 (dismissing NYLL claim even where plaintiff "reported to managers based in New York, served clients mostly based in New York, and travelled to New York State and City two to three times a year, for two to three days each visit, in order to meet with supervisors and service clients"); *see also Vera Inst.*, 2023 WL 11879682, at \*1, 15-16 (dismissing NYLL claim for retaliation given plaintiff worked remotely in Maryland at the time, notwithstanding plaintiff used to work in New York, was supervised by staff who still worked in New York, and the defendant employer was still based in New York); *Warman*, 2016 WL 3676681, at \*4 ("If maintaining a New York headquarters constituted consent to the application of New York statutory law to all its employees—no matter their state of employment—it would swallow the presumption against extraterritoriality[.]"); *In re Stage Presence, Inc.*, 18-cv-10662 (JSR), 2019 WL 2004030 (S.D.N.Y. May 7, 2019) (holding NYLL did not apply to work conducted outside New York despite the fact that plaintiffs resided in New York, and were recruited and hired in New York by a New York corporation); *Magnuson v. Newman*, No. 10-cv-6211(JMF), 2013 WL 5380387, at \*5 (S.D.N.Y. Sept. 25, 2013) (same). Nor does it matter that Plaintiff's sales territory covered New York. *See Kingston*, 187 A.D.3d at 579; *Hart v. Dresdner Kleinwort Wasserstein Sec., LLC*, No. 06 CIV. 0134 (DAB), 2006 WL 2356157, at \*1, 7 (S.D.N.Y. Aug. 9, 2006)

(dismissing NYLL claim where employee, who previously worked in New York, temporarily moved to England but maintained many clients who were in New York).

Lastly, Plaintiff cites no caselaw to support his argument that the NYLL should apply because Defendants "applied New York State and New York City taxes as to his compensation" and he was fired while at a meeting in New York. Opp'n at 11. Indeed, courts have held that "the NYLL does not apply to work performed outside of New York, even where all the parties are New York employees." *Drozd v. U.S.A. Concepts of New York Corp.*, No. 09-CV-5120 (RER), 2015 WL 13733713, at *11 (E.D.N.Y. Apr. 23, 2015); *see also In re Stage Presence Inc.*, 559 B.R. 93, 100 (Bankr. S.D.N.Y. 2016), *aff'd sub nom. In re Stage Presence, Inc.*, No. 18-cv-10662 (JSR), 2019 WL 2004030 (S.D.N.Y. May 7, 2019) (finding the NYLL did not apply even though payment of the employees' wages "was to be made in New York by a New York payroll entity, using a New York payroll processing accounts and New York bank accounts"). Further, the fact that Plaintiff was allegedly fired in New York in 2024 in violation of NYLL § 215 because he objected to changes to his compensation beginning in 2022, does not overcome the fact that, at all relevant times, he alleges he was exclusively working in Pennsylvania. *See Kingston*, 187 A.D.3d at 579; *Dittes*, 2025 WL 1984273, at *4 ("Because Plaintiff's claims under NYLL § [] 215 are premised almost exclusively on work performed outside of this State" plaintiff cannot state a claim under that statutory provision) (citation omitted).

While Plaintiff's NYLL claims must be dismissed to the extent they are based on conduct that arose after he moved to and began working from Pennsylvania in October 2020, Plaintiff nonetheless alleges that the New Plan, which impacted his commission-based compensation, was introduced in October 2019 and allegedly caused him to suffer losses to his compensation from 2020 onwards. Am. Compl. ¶¶ 38, 71. Thus, based on these allegations, the Court finds the

12

extraterritorial bar does not apply to Plaintiff's NYLL claims embodied in Counts One and Two, to the extent they are solely premised on unpaid commissions from the time of the New Plan's introduction in October 2019 through the time he began working in Pennsylvania in October 2020. *See Kim*, 2021 WL 7906544, at *1-2, 6 (dismissing plaintiff's NYLL claims to the extent they were premised on her work for her employer's New Jersey restaurant from March 2019 until February 2020, but not for her NYLL claims premised on her work at her employer's New York restaurant from May 2018 until February 2019).

Accordingly, Plaintiff's NYLL retaliation-based claims embodied in Counts Three and Four are dismissed with prejudice.[11] in their entirety as they focus solely on retaliation and conduct that occurred while Plaintiff exclusively worked in Pennsylvania.  Further, Counts One and Two are dismissed with prejudice to the extent they concern conduct and acts that occurred after October 2020.  The extraterritorial bar to the application of the NYLL permits only Plaintiff's claims for unpaid commissions from the time the New Plan was introduced in October 2019 up to his move to Pennsylvania in October 2020.

However, as discussed below, Plaintiff's remaining NYLL claims fail for independent reasons.

### B. Plaintiff's Remaining NYLL Claims for Unauthorized Commission Deductions

Plaintiff's remaining NYLL claims for unlawful deductions from his commissions in violation of NYLL § 193 is premised on the fact that on October 31, 2019, Defendants introduced a commission plan—the New Plan—with which he did not agree.  Am. Compl. ¶¶ 38-39.  In turn,

---

[11] The Court has previously granted Plaintiff leave to amend his original complaint in response to the arguments raised in Defendants' pre-motion letter in connection with its anticipated motion to dismiss.  [ECF No. 30].  Plaintiff ultimately filed an amended complaint.  [ECF No. 32].  In granting leave to amend, the Court made clear that "[t]his will be Plaintiff's last opportunity to amend the complaint in response to arguments raised" in Defendant's pre-motion letter outlining the arguments made in the current motion to dismiss before the Court.  [ECF No. 30].

he alleges that the New Plan caused his compensation to suffer—specifically that it caused him to lose roughly $125,000 in "earned commissions" from 2020 to 2024. *Id.* ¶ 71. As previously noted, Plaintiff would only be able to seek recovery for commissions earned while he still actually worked in New York until October 2020.

As Plaintiff's own cited authority recognizes, "if an employee is paid on a commission basis, New York law permits deductions made before—but not after—the commissions were earned." *Karic v. Major Auto. Cos.*, 992 F. Supp. 2d 196, 202 (E.D.N.Y. 2014) (*quoting Perez v. Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091(ER), 2013 WL 749497, at \*10 (S.D.N.Y. Feb. 28, 2013); *see also Pachter v Bernard Hodes Grp., Inc.*, 10 N.Y.3d 609, 617, 891 N.E.2d 279, 284, 861 N.Y.S.2d 246, 284 (2008) (noting the legality of deductions to commissions under NYLL § 193 depends on whether the commission was earned and became a wage subject to the restrictions in section 193).

Critically, Plaintiff does not allege that the New Plan had retroactive effect. Am. Compl. ¶ 38. Rather, he alleges the opposite: that the New Plan only had prospective effect as he alleges the New Plan caused his commissions to dip from 2020 onwards. *Id.* ¶ 71. Thus, Plaintiff's claim necessarily fails as he does not allege a deduction of any already earned commission. In short, Plaintiff alleges that he disagreed with how his commissions would be calculated moving forward, which is not actionable, and fails to allege a change that led to retroactive deductions of commissions already earned. Accordingly, Plaintiff's remaining NYLL claims, which are not subject to the extraterritorial bar, are nonetheless inadequately plead. Thus, Counts One to Four of Plaintiff's Amended Complaint are dismissed with prejudice in their entirety and individual Defendants Janice Wang, Jason Wang, Eric Lee, and Agnes Serrant are also dismissed as they are not otherwise named in the remaining quasi-contractual claims embodied in Counts Five and Six.

## II.      Quantum Meruit and Unjust Enrichment Claims

Defendants also move to dismiss Plaintiff's quasi-contractual claims for unjust enrichment and *quantum meruit* with respect to the roughly $125,000 in commissions and $4,500 "charge back" alleged in Counts Five and Six.  Am. Compl. ¶¶ 85-91.  These claims are asserted against Alvanon Inc. and Alvanon HK, Ltd.  *Id.*

"In order to recover in *quantum meruit* under New York law,[12] a claimant must establish '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'"  *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000)); *see also Bauman Assocs., Inc. v. H & M Int'l Transp., Inc.*, 171 A.D.2d 479, 484, 567 N.Y.S.2d 404 (1st Dep't 1991).  "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006).  As the Second Circuit has explained, these claims under New York law are to be analyzed together because *quantum meruit* and unjust enrichment are not separate causes of action.  *Mid-Hudson Catskill*, 418 F.3d at 175.

As an initial matter, Defendants argue that these claims cannot survive because it is settled that Plaintiff's quasi-contractual claims are precluded where there "is a valid and enforceable contract governing a particular subject matter, whether that contract is written, oral, or implied-in-fact[.]"  Mem. at 11 (quoting *Shetel Indus. LLC v. Adin Dental Implant Sys., Inc.*, 493 F. Supp. 3d

---

[12] Both parties agree that New York law applies to Plaintiff's quasi-contract claims.  *See* Mem. at 10-11; Opp'n at 14-15.

64, 113-14 (E.D.N.Y. 2020)); *see also Beth Israel*, 448 F.3d at 587 (same). However, Defendants merely assert, without any citation or legal argument, that there is valid and enforceable oral or implied-in-fact contract governing Plaintiff's compensation. Reply at 9-10.

Plaintiff's Amended Complaint is silent on this issue beyond alleging that the "terms of Plaintiff's employment with [Alvanon] were never reduced to writing and signed by Plaintiff and any authorized agent of [Alvanon.]" Am. Compl. ¶ 38. Plaintiff does of course allege there was a "New Plan" regarding his compensation. *Id.* ¶¶ 38, 42. In his Opposition, Plaintiff does not directly address this issue and instead argues that "[w]hen an agreement is unenforceable or there is no contract, a party may recover for services performed on a *quantum meruit* basis." Opp'n at 14. Thus, without more, at the motion to dismiss stage the Court cannot determine that there existed a "a valid and enforceable contract governing a particular subject matter"—written, oral, or implied-in-fact—such that Plaintiff's quasi-contractual claims are precluded as a matter of law.

Defendants alternatively argue that these claims fail because Plaintiff merely alleges that he performed services knowing in advance the rate at which he would be compensated, and, as such, Plaintiff was free to resign if he did not like those terms prior to providing any services. Mem. at 11. Plaintiff fails to respond to Defendants' arguments and instead asserts that these claims are not duplicative of his NYLL claims. Opp'n at 14-15.

Defendants' argument is well taken, but only goes so far. Plaintiff cannot recover under these quasi-contractual claims based on the implementation of the New Plan, which, as Plaintiff alleges, had only prospective effect. Am. Compl. ¶ 38, 71. Given its prospective nature, Plaintiff fails to allege that he was not fully paid for the performance of his services or that his compensation did not provide reasonable value for the services he provided since he knew of the terms of his compensation under the New Plan prior to performing services and earning any commissions. *See*

*James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012) (dismissing unjust enrichment claim seeking "all earned commissions due and owing" where plaintiff "failed to allege that he performed work that exceeded the scope of his duties" or that "his salary did not provide reasonable value for the services he provided"). In essence, Plaintiff's quasi-contractual claims for losses caused by the New Plan boil down to wishing he was paid more, not that he was retroactively and unjustly deprived of compensation for services provided.

However, the Court cannot dismiss these claims in their entirety on this basis. Plaintiff elsewhere does allege retroactive changes to his compensation after he had provided services for which he was not compensated. Namely, Plaintiff alleges that certain accounts classified as uniforms/military were transferred to another employee in the middle of a commissionable quarter in September 2022, Am. Compl. ¶¶ 40-41, that Defendants deducted $4,500 from purportedly earned commissions, *id.* ¶ 49, that Plaintiff was forced to share his commissions on the Calvin Klein account with another employee, *id.* ¶ 53, and that Plaintiff did not receive credit for a sale on an account that historically was his. *Id.* ¶ 60. These allegations plausibly plead that Plaintiff had earned commissions that were deducted after the services were performed. Defendants offer no basis to preclude recovery under Plaintiff's quasi-contractual claims for these specific retroactive deductions from his commissions.

Accordingly, Counts Five and Six are dismissed with prejudice to the extent they rely on losses caused by the New Plan, which per Plaintiff's complaint prospectively caused roughly $125,000 in damages. *Id.* ¶ 48. While Plaintiff's quasi-contractual claims for recovery of the few actions where Defendants allegedly deducted Plaintiff's earned commissions retroactively as alleged in Counts Five and Six survive at this stage, the Court notes that to the extent discovery reveals that Plaintiff had a contractual right to these commissions, these quasi-contractual claims

17

may not be cognizable. *See Beth Israel*, 448 F.3d at 587 (noting unjust enrichment claims are precluded "whenever there is a valid and enforceable contract governing a particular subject matter, whether that contract is written, oral, or implied-in-fact"); *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388–89, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED IN PART AND DENIED IN PART.

IT IS HEREBY ORDERED that Plaintiff's NYLL claims reflected in Counts One to Four of Plaintiff's Amended Complaint are DISMISSED WITH PREJUDICE and individual Defendants Janice Wang, Jason Wang, Eric Lee, and Agnes Serrant are also DISMISSED.

IT IS FURTHER ORDERED that Defendants' motion to dismiss Plaintiff's claims for *quantum meruit* and unjust enrichment, Counts Five and Six, respectively, is granted in part to the extent they rely on the prospective implementation of the New Plan. Plaintiff may proceed on these quasi-contractual claims against the sole remaining Defendants Alvanon Inc. and Alvanon HK, Ltd. only for the following alleged *retroactive* changes to his compensation:

- The transferal of certain accounts classified as uniform/military to another employee in September 2022 in the middle of a commissionable quarter. Am. Compl. ¶¶ 40-41;

- the $4,500 deduction implemented in January 2023 from purportedly earned commissions that were previously paid to Plaintiff. *Id.* ¶ 49;

- being forced to share commissions on his Calvin Klein account with another employee, which decision allegedly was made in April 2024. *Id.* ¶ 53; and

- not receiving credit for a sale in July 2024 on the Calvin Klein/PVH account that historically had been his. *Id.* ¶ 60.

The Clerk of Court is respectfully requested to terminate docket entry 33.

**SO ORDERED.**


**Dated: February 26, 2026**
       **New York, New York**

                                      **MARY KAY VYSKOCIL**
                                    **United States District Judge**